No. 3249.—ARTEMISE E. BIRD v. J. V. DURALDE, Sheriff, et als.

In a suit by the wife who has been separated in property from her husband and authorized to administer her own affairs, by way of third opposition against the creditors of her husband, who have seized the crop as the property of her husband, it is incumbent upon her to establish the validity of her judgment of separation. If she show, in answer to the objection that her judgment is invalid because her husband was solvent and had ample means to satisfy her demands after paying all his liabilities at the time her suit was brought, that his affairs were in a disordered and embarrassed condition, and that, after paying his debts he would have nothing left with which to satisfy her claims, then she will be held to have had the right to institute and prosecute her suit for a separation of property. If she show, in answer to the objection that her judgment of separation is null because she has not made proper efforts to enforce it, that she has caused repeated executions to issue thereon, and has realized but a small portion thereof, which has been credited on the judgment, that in addition to her proceedings by execution, she has taken in part payment, at a fair price, certain lots of ground belonging to her husband, which have also been credited on the judgment, then she will be held to have made proper efforts to enforce payment, and her judgment of separation of property will not be held to be void on that account.

The wife having established the validity of her claim, her right to institute and prosecute her suit for a separation, and having shown that she has made every possible effort to enforce her judgment, and having shown also that a large portion of the real estate belonged to and constituted her separate estate before her marriage, she must be held to be entitled to administer it, and to enjoy in her own right the crops made after the rendition of her judgment of separation of property from her husband.

APPEAL from the Fifth Judicial District Court, parish of West Baton Rouge. *Posey, J. Samuel P. Greves* and *A. S. Herron*, for plaintiff and appellee. *White & Robertson, Barrow & Pope* and *Fuqua & Callihan*, for defendants and appellants.

TALIAFERRO, J. This controversy is between a wife alleging she is separate in property, and the creditors of her husband. The wife, who is the plaintiff in this suit, instituted this proceeding by way of third opposition, claiming the proceeds of a crop of sugar raised in the year 1869, chiefly, as she alleges, on her own plantation, but partly on that of her husband; the said crop of sugar and the molasses, the product of her cultivation for the year 1869 having been seized under executions issued under judgments of various creditors of her husband and advertised for sale by the sheriff. She shows that by judgment of a competent court, rendered on the twentieth of July, 1866, she was decreed to be separate in property from her husband and authorized to administer her separate estate. She alleges that by the authorization so decreed she has continued to administer her separate property independently of her husband, and in so administering it, she has carried on the cultivation of her plantation in her own interest and for her separate use and benefit.

During the month of December, 1869, executions were issued in four several cases on judgments of the creditors against Thompson W. Bird, the plaintiff's husband, and all his real estate, consisting of his one-third interest in the "Hollywood Plantation," the Bellevue Place, several detached parcels of land, mules, stock, farming utensils, etc., were seized and sold on the fifth of March, 1870, on a credit of twelve

months, the proceeds amounting to $36,095, for which bonds were taken from the various purchasers according to law. Previous to the sale, an execution was issued on the wife's judgment, and the same property was seized. The property, it seems, brought an amount exceeding that of the prior mortgages. The sugar crop of 1869 and the molasses were sold by consent, and the money held subject to the decision of the suit.

The proceeds of the sale of the real estate over and above the amount of the prior mortgages and those of the sugar and molasses form the subject of the contest. The wife claims the latter as owner, the former by her tacit and judicial mortgage. The creditors oppose her claims, alleging the illegality of her judgment on various grounds, and they contend that the crop of 1869 seized under execution was the property of her husband or of the community and subject to the payment of his debts.

Judgment was rendered in favor of the plaintiff; her judgment of separation of property was held to be valid, and she was decreed to be the owner of the crop of 1869, and entitled to its proceeds. The judgment of 1866, dissolving the community of acquets and gains, awarded the wife the sum of $3550 24 on account of paraphernal funds received by the husband, and recognized a legal tacit mortgage against her husband to date and take effect from the year 1837 for a part, from subsequent dates for other portions, the latest from February, 1856. Several credits on this judgment being deducted, there was a balance due at the rendition of judgment in the present suit of $1694 33, which the court ordered to be paid by priority out of the proceeds of the real estate, and directed the remainder to be distributed among the other creditors, according to law. From this judgment the creditors appealed.

The grounds taken by the appellants in attacking collaterally the judgment of the plaintiff against her husband are: That the insolvency of the husband is not shown; that having failed to prosecute her judgment as required by law, the judgment itself became null, and as a consequence the community existing between herself and husband was not dissolved; that the proceeds of the crop of 1869 do not, therefore, belong to the plaintiff as her paraphernal means, as she pretends, but are subject to be applied to the payment of the debts of the husband.

After some pains taken in the examination of the large record brought up in this case, we come to the conclusion that at the time of the institution of the plaintiff's suit for a separation of property Thompson W. Bird was in embarrassed circumstances. The counsel of the appellants have labored assiduously to show the contrary, but we think unsuccessfully. Upon the basis of the first estimate presented, an

error has crept into the array of assets, we apprehend, by giving the amount of value of property assessed to Bird in 1866, and besides his interest in the Hollywood estate; the latter, we imagine, being included among the assessed property estimated at $32,890. The value of his interest in Hollywood being put at $8333, this sum should not appear as an asset if it be embraced in the assessment. If so, the amount of liabilities preponderates. The second tableau is not more satisfactory. Resort is had to doubling the value of the Hollywood plantation, making it worth $50,000, whereas in the first estimate it was taken at $25,000, the value as shown by the evidence in this case; to setting down as an asset a mortgage to Bird by Mrs. Daigle for $27,150, and adding $6698, amount brought out by the first calculation as what Bird is worth over and above his debts. The aggregate in the second estimate making him worth, above all his liabilities, $42,181, a sum sufficient to cover all the debts of the complaining creditors, the balance due on the wife's judgment, and to leave no inconsiderable sum besides. The Daigle mortgage is not explained; it is not shown that the notes upon which it is predicated are held by Bird or not, or whether they are worth anything or not if he be the holder. For aught that appears, they may have all been paid. The introduction of this mortgage and the $50,000 valuation of Hollywood in evidence as showing ownership of property in Bird, was objected to, and the court below refused to admit it, on the ground that it was offered after testimony had already been taken on both sides of the question relating to the indebtedness of Bird and his means of discharging it; that the same was offered at an improper time and out of the regular order of taking testimony, and was calculated to take the plaintiff off her guard and by surprise. A bill of exceptions was taken by the defendants.

We deem it unnecessary to decide upon the bill of exceptions, as the testimony, had it been admitted, would be contradictory in part, and, upon the whole, vague and unreliable for the purpose for which it was sought to be used.

The $40,000 of assets in the hands of the attorney, Greves, of which one-half, it is said, belonged to Bird, consisted of notes and uncollected debts due the estate of Abraham Bird, whose executor, it seems, Thompson W. Bird was. These were to a large extent worthless, and the evidence does not warrant the conclusion that Thompson Bird's interest in them was worth more than the amount which the attorney paid over to him, which was about five or six thousand dollars in all. All estimates of the character of those made by the defendants as to the value of the property of Bird, are indefinite and unsatisfactory. The evidence satisfies us that the situation of the affairs of the husband in this case were such as authorized the wife, by article 2425 of the

Civil Code, to petition against her husband for a separation of prop—erty.   That the plaintiff's claims against her husband were well founded, seem not to have been earnestly controverted.   They are fully established.   It is shown that a large portion of the land embracing the Esnard Plantation is her separate property.

The defendants contend that the judgment of the plaintiff and opponent is null on the ground that it was not enforced in the manner contemplated by law by a continuous effort to realize its amount out of the property of her husband.   We find that the wife's judgment was obtained on the twentieth of July, 1866; an execution was issued on the tenth of August following; property was seized and sold the sixth of October, and $597 30 were made and credited on the judgment. On the eleventh September, 1866, another execution issued, under which certain judgments were seized, but we find nothing in the record showing that anything was made by this seizure.   On the twenty-ninth of December, 1869, a *fieri facias* issued, and it seems that the further sum of $324 79 was made under this seizure and credited upon the judgment.   Afterwards the further sum of $1500 was credited upon the judgment in consideration of the transfer by the husband of certain lots of ground at East Pascagoula.   The interval between the issuing of the first and last execution, a period of about three years, the defendant argues was a delay fatal to the validity of the judgment, and cites the case of Bertre *v.* Walker, sheriff, et al., 1 Rob. 432.   But in that case no execution issued on the wife's judgment until twelve months had elapsed from the rendition of the judgment, and no effort of any kind had been used to realize its amount.   No payment had been made upon it.

We think that a sufficient diligence is shown in this case in the prosecution of the plaintiff's judgment.   Besides the property seized, there was no other personal property of the husband that could be reached.   The interval of non-action worked no injury to the defendants.   The records show that they lay dormant two or three years after the rendition of the wife's judgment and failed to seize any of their debtor's property; that they waited until the third crop made by Mrs. Bird was ready for sale, the first one perhaps that was worth seizing, as the only available source from which they expected anything.   Bird's real estate was under heavy mortgages, which, perhaps, presented a barrier insurmountable to these defendants.   They might have interposed in regard to the personal property seized by the wife and raised the issue long before as to the validity of her judgment, but this was not done.

Lastly, it is urged by the defendants that the cultivation of the plantation, though nominally carried on in the name of Mrs. Bird, is really conducted by the husband for his own use and benefit.

Bird v. Duralde, Sheriff, et als.

They assert that the Esnard and Bellevue plantations, with all the mules and farming utensils, belonged to Bird, and contend that the wife could not cultivate those plantations on her own account. The evidence, as we understand, is, that what is called the Esnard plantation is the separate property of the plaintiff; that her principal cultivation was carried on upon that plantation; that she also had a part of the Bellevue plantation in cultivation in the years 1868 and 1869, and that the greater part of the sugar crop of 1869 was grown upon the Esnard plantation. No effort was made by the defendants to show what portion of that crop was raised on the land of the husband. They treat it as entirely the property of the husband. The question raised on this branch of the contest is, did the fact of the wife's cultivation in 1869 of a part of her husband's plantation, in addition to that of her own, vitiate and render null her judgment authorizing her to administer her own affairs. Under all the facts of the case we think it did not. It is proved that the management of the plantation was under her control. It is shown that she made the contracts with the laborers and that the transactions with the commission merchant were carried on in her name through the agency of her husband, acting under a power of attorney from her.

We conclude that the judgment of the court a qua was properly rendered and should be maintained. The claims of the wife are clearly bona fide. The embarrassed state of the husband's affairs authorized her judgment of separation of property; she has shown sufficient diligence in the prosecution of her judgment, and that she has assumed under that judgment the administration of her separate estate.

It is therefore ordered, adjudged and decreed that the judgment of the district court be affirmed, with costs.

Rehearing refused.